**FILED**

DEC 1 8 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ULYSSES GISSENDANNER, | | |
| | Plaintiff, | **07CV 7105** |
| v. | | **JUDGE GETTLEMAN** |
| GEICO INSURANCE CO., | | **MAGISTRATE JUDGE KEYS** |
| | Defendant. | |

**Complaint for Damages for Violations of
29 U.S.C. §2601 et. seq. (the Family and Medical Leave Act),
820 ILCS 105/1 et seq. (the Illinois Minimum Wage Law), and
820 ILCS 115/1 et seq. (the Illinois Wage Payment and Collection Act)**

Plaintiff, Ulysses Gissendanner, by and through his attorneys, Deanne S. Medina and Karen J. Doran of DoranMedina, LLC, for his complaint against Geico Insurance Co. alleges and states as follows:

**Introduction**

1.     Plaintiff, Ulysses Gissendanner, ("Plaintiff" or "Chris") was employed as an insurance adjuster for Geico Insurance Co. ("Defendant" or "Geico") from September 9, 2003 to May 10, 2006. During that time, he earned a salary increase, was promoted from field adjuster to shop/express adjuster and received above-average performance appraisals from his supervisors. In or around May, 2004 when he was promoted, he began working 50 to 65 hours a week in order to handle all of the claims assigned to him. After several months of this, Chris complained to Defendant about his heavy workload and also complained that Geico was not paying him time-and-a-half for overtime. Notwithstanding his complaints, Defendant did not reduce his workload or pay him time-and-a-half for overtime. In or around September or October, 2005 Chris informed his supervisor that he was going to join a pending class action overtime case against Geico by some of its employees. In or around November, 2005 Chris informed his boss that he was experiencing stress and depression related to his job and requested time off. His supervisor informed him that he would be fired if he took a leave of absence. Nevertheless, on December 29, 2005 Chris requested one month of sick leave and Geico's human resources department granted that leave to begin the following month. The next day, December 30, 2005 Chris's boss presented him with a performance improvement plan.

Though he was on Family and Medical Leave the first week of January, 2006, he nevertheless was required to come into work to settle some issues. Geico did not compensate Chris for that time. Upon information and belief, prior to Chris requesting time off, his annual salary increase had been approved; while on leave Chris's boss denied him this raise. On March 20, 2006, Chris returned to work as his doctor had released him to work part-time. Despite this restriction, Geico placed Chris on a full-time schedule, which he worked. On May 5, 2006 Chris's supervisor complained to him about his performance and informed him that he was on a final warning. On May 10, 2006, Chris spoke with his boss and requested a personal day to care for his ailing sister. His supervisor approved the day off. Later that day Chris's boss and his boss arrived at his home with a police escort and confiscated his work computer, credit cards, cell phone, and car, informing Chris that he was fired.

As a result of all of this, Plaintiff now brings this suit for violations of the Family and Medical Leave Act, the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act.

**Parties**

2.      Plaintiff Ulysses Gissendanner is a male citizen of the State of Illinois and resides within the territorial limits of the United States District Court for the Northern District of Illinois, Eastern Division.

3.      At all times relevant to this Complaint, Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

4.      At all times relevant to this Complaint, Plaintiff was an "eligible employee" as defined by 820 ILCS 105/?.

5.      At all times relevant to this Complaint, Plaintiff was an "eligible employee" as defined by 820 ILCS 115/1.

6.      On information and belief, Defendant, GEICO Insurance Company (hereinafter, "Geico" or "Defendant") exists in and does business within the territorial limits of the United States District Court for the Northern District of Illinois, Eastern Division.

7.      On information and belief, at all times relevant to this Complaint, Defendant was an "employer" as defined by 29 U.S.C. § 2611(4).

8.      On information and belief, at all times relevant to this Complaint, Defendant was an "employer" as defined by 820 ILCS 105/?.

9.    On information and belief, at all times relevant to this Complaint, Defendant was an "employer" as defined by 820 ILCS 115/2.

## Jurisdiction

10.    This action is brought for violations of 29 U.S.C. §2601 *et. seq.* (the Family and Medical Leave Act; "FMLA"), 820 ILCS 105/1 *et seq.* (the Illinois Minimum Wage Law; "IMWL"), and 820 ILCS 115/1 *et seq.* (the Illinois Wage Payment and Collection Act; "IWPCA"). Jurisdiction of this Court is founded upon 28 U.S.C. § 1331.

## Venue

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as, on information and belief, Defendant is located in this District and the facts giving rise to this cause of action occurred in this District.

## Events

12.    Gissendanner began working for Defendant on or around September 9, 2003 as a field adjustor.

13.    In this capacity, Gissendanner worked primarily from his home and set his own hours.

14.    His supervisor from his date of hire through in or around May, 2005 was Thomas Stohl.

15.    Initially, Defendant paid Gissendanner approximately $42,500 annually.

16.    Within his first five months of work, Defendant awarded Plaintiff its Bronze Eagle Award for leading his group in all statistical numbers.

17.    In or around May, 2004 Defendant promoted Gissendanner to a shop/express adjustor.

18.    In this capacity, he received claim assignments from the home office and street adjustors, and he also handled the claims for "tow-ins" as well as supplemental orders in the shop. His duties included setting up customers with rental cars, updating repair statuses, and paying the repair shop, customers, and claimants. At times appointments were double booked causing him to have to handle multiple customer issues at once. He worked primarily from a shop office.

19.    At the end of 2004, Defendant approved a $2,500 a year merit increase for Plaintiff, as his performance ranked amongst his group's top 10. He began receiving this raise in or around March, 2005.

20.     Beginning in or around January, 2005, several quality issues with the repair shop Gissendanner worked from became apparent to Defendant (specifically to Tom Stohl, Frank Cirillo, Paul Gook, and Gary Musolf), including but not limited to estimates and repairs taking too long (at times days), customers complaining of the shop's poor repair work, and shop employee turnover contributing to shop employees becoming increasingly less familiar with Geico claims.

21.     At around this time, Gissendanner notified Geico (Paul Cook, Tom Stohl, and Gary Musolf) of these problems and complained that his workload was becoming too much for just one person. He explained that he had to work 7 days a week, averaging 150-175 claims per month, and that his computer was too slow. He informed Stohl that he was losing sleep and was depressed because of his job.

22.     In or around May, 2005 Frank Cerillo became Gissendanner's supervisor.

23.     In or around August, 2005 the shop at which Gissendanner had been working closed and as such, he filled it at other shops in the area.

24.     At this time, Gissendanner again received a new supervisor, Denis Schafler.

25.     Schafler gave Gissendanner positive reviews on his performance shortly after he began supervising him, and also noted that Gissendanner's company-issued computer (the most recent at that point of approximately nine computers) was running slow, which deleteriously affected how he could perform his job.

26.     In or around September or October, 2005, Gissendanner informed Schafler that he intended on joining a class-action overtime case against Defendant.

27.     In or around November, 2005, Gissendanner told Schafler that due to his work he was suffering from stress and depression and that as such he needed to take some sick leave; Schafler replied "if you take leave, I'll fire you."

28.     Notwithstanding that threat, on December 29, 2005 Gissendanner requested one month sick leave, which Human Resources granted to him that day.

29.     The following day, on December 30, 2005 Schafler presented Gissendanner with a performance "write up" and placed him on a performance improvement plan ("PIP").

30.     Prior to this, Defendant had never written Plaintiff up or placed him on a PIP, in fact Mr. Gissendanner's previous supervisor, Mr. Cirillo gave him nothing but positive reviews.

4

31.     During this meeting, Schafler told Gissendanner that if he started his sick leave that day, then he would have to surrender the keys to his company car, as well as surrender his computer, cell phone and credit cards.

32.     Gissendanner told his boss that he was taking medical leave beginning January 1, 2006; Schafler told him that nevertheless he expected Gissendanner to come in the first week of January to settle some things.

33.     Fearing for his job, Gissendanner in fact came into work that week, however Defendant did not pay him for his work.

34.     At around this same time, the raise Gissendanner had earned and that Defendant had already approved was reversed and consequently Gissendanner did not receive an annual merit increase.

35.     On or around February 19, 2006 Schafler ordered Plaintiff to return his company car, which he did and consequently rented a car until his return to work. However, when another employee, Bobby Lewis, took two months of leave, he did not have to return his company car and in fact did not.

36.     Although Geico had temporarily repossessed Plaintiff's car, it nevertheless continued to charge Gissendanner weekly mileage for personal use.

37.     On or around March 20, 2006, Gissendanner returned to work on a part-time basis (intermittent leave).

38.     Notwithstanding his part-time status Defendant expected him to perform the same amount of work he did as a full-time employee, that is handle six claims a day and catch up on all of the paperwork that had been left untouched during his near-three month absence.

39.     On or around May 5, 2006 Schafler complained to Gissendanner about his work performance – specifically that he was arriving late to work (despite previously informing Plaintiff that he could use his break time to arrive to work after 9:00 in order to accommodate his children's school schedules) and not completing his paperwork on time (despite the fact that Defendant denied him access to a computer for a workweek). He concluded the meeting by telling Gissendanner that he was on a "final warning."

40.    Gissendanner had told Schafler that he could not arrive at work prior to 9 or 9:30 a.m. because he had to ensure that his children were safe and well cared for prior to school.

41.    On Monday, May 8, 2006 Defendant's Human Resources Department began compiling Gissendanner's termination documents.

42.    Gissendanner took a personal day that Wednesday to care for his sick sister (at that point Defendant still had not provided him with a computer to use). He spoke with Schafler who originally approved his absence.

43.    Later that afternoon, Schafler called Gissendanner and fired him. Plaintiff then called Musolf and told him that he would return Geico's property later that evening; Musolf agreed.

44.    A few hours later, Schafler and his supervisor, Paul Cook arrived at Plaintiff's home and retrieved Gissendanner's company car, computer, and company-issued credit cards. They brought with them a police escort.

## Count I

## Demand for Relief for Violations of
## the Family and Medical Leave Act Against Defendant Geico Insurance Co.

45.    Plaintiff restates and realleges paragraphs 1 through 44 as paragraph 45 of this Count I.

46.    By virtue of the foregoing, Defendant violated the Family and Medical Leave Act by interfering with his rights under the Act by preventing him from taking leave, by requiring him to perform work while on leave, and by refusing to allow him to work intermittently.

47.    Plaintiff further violated the FMLA by as well as by retaliating against him for taking FMLA leave by firing him shortly after his return to work.

48.    As a result of these violations, Plaintiff has suffered loss of income, benefits, and other compensation.

49.    In light of Defendant's knowledge of the statute and willful disregard of its provisions, its conduct warrants the imposition of liquidated damages.

## Count II

### Demand for Relief for Violations of

### the Illinois Minimum Wage Law Against Defendant Geico Insurance Co.

50.     Plaintiff realleges and restates paragraphs 1 through 44 as paragraph 50 of this Complaint.

51.     By the facts alleged, Defendant violated the Illinois Minimum Wage Law (820 ILCS 105/4a) by refusing to compensate Plaintiff at the rate of one and one-half times his regular hourly rate for hours worked in excess of forty hours per week.

WHEREFORE, Plaintiff requests that this court:

A.     Enter judgment in his favor and against Defendant in the amount of all back wages and overtime as provided by the Illinois Minimum Wage Law;

B.     Enter judgment in favor of Plaintiff and against Defendant for prejudgment interest in accordance with 815 ILCS 205/2;

C.     Enter judgment in favor of Plaintiff and against Defendant for punitive damages in the amount provided for by section 12(a) of the Illinois Minimum Wage Law (820 ILCS paragraph 105/12(a));

D.     Enter judgment in favor of Plaintiff and against Defendant for the plaintiff's reasonable attorney's fees, expenses, and costs of this action; and

E.     Award Plaintiff such other relief as this Court deems just and appropriate.

## Count III

### Demand for Relief for Violations of

### the Illinois Wage Payment and Collections Act Against Defendant Geico Insurance Co.

52.     Plaintiff realleges paragraphs 1 through 44 as paragraph 52 of this Complaint.

53.     Defendant knowingly violated the provisions of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.*) by failure to pay Plaintiff wages, to wit, overtime wages.

54.     Plaintiff made a demand for amounts due and owing at least three days before this action was brought and is therefore entitled to reasonable attorney's fees under the Illinois Attorney's Fees in Wages Act (705 ILCS paragraphs 225/0.01 *et seq.*).  The demand letter, previously

referenced, is attached to this Complaint as Exhibit 1, the Certificate of Mailing for the demand letter is attached to this Complaint as Exhibit 2, and certified mailing receipt for the demand letter is attached to this Complaint as Exhibit 3.

WHEREFORE, Plaintiff requests that this Court:

A.    Order the Defendant to produce all records of all wages earned by Plaintiff;

B.    Enter judgment in favor of Plaintiff and against the Defendant for the amount shown to be due Plaintiff for Defendant's failure to pay wages;

C.    Enter judgment in favor of Plaintiff and against Defendant for the Plaintiff's reasonable attorney's fees, expenses, and costs of this action; and

D.    Award Plaintiff such other relief as this Court deems just and appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,
Ulysses Gissendanner

By One of His Attorneys

Deanne S. Medina
Atty No. 6273485
Karen J. Doran
Atty. No. 06282773
Attorneys for Plaintiff
DoranMedina, LLC
2625 Butterfield Road, Suite 138S
Oak Brook, IL 60523
Telephone: 630/368-0200
Fax: 630/368-0202
E-mail: dmedina@doranmedina.com
        kdoran@doranmedina.com