UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ULYSSES GISSENDANNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07-cv-7105 |
| v. | ) | |
| | ) | Judge Gettleman |
| GEICO INSURANCE CO., | ) | Magistrate Judge Keys |
| | ) | |
| Defendant. | ) | |

**DEFENDANT, GEICO INSURANCE COMPANY'S ANSWER TO
PLAINTIFF'S COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
29 U.S.C. §2601 _et seq._ (THE FAMILY AND MEDICAL LEAVE ACT),
820 ILCS 105/1 _et seq._ (THE ILLINOIS MINIMUM WAGE LAW), AND
820 ILCS 115/1 _et seq._ (THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT)**

Defendant, GEICO Insurance Co. ("GEICO") by and through its undersigned attorneys,

for its Answer to Plaintiff's Complaint, states as follows:

### Introduction

1.      Plaintiff, Ulysses Gissendanner, ("Plaintiff" or "Chris") was employed as an
insurance adjuster for Geico Insurance Co. ("Defendant" or "Geico") from September 9, 2003 to
May 10, 2006.  During that time, he earned a salary increase, was promoted from field adjuster
to shop/express adjuster and received above-average performance appraisals from his
supervisors.  In or around May 2004 when he was promoted, he began working 50 to 65 hours a
week in order to handle all of the claims assigned to him.  After several months of this, Chris
complained to Defendant about his heavy work load and also complained that Geico was not
paying him time-and-a-half for overtime.  Notwithstanding his complaints, Defendant did not
reduce his workload or pay him time-and-a-half for overtime.  In or around September or
October, 2005 Chris informed his supervisor that he was going to join a pending class action
overtime case against Geico by some of its employees.  In or around November, 2005 Chris
informed his boss that he was experiencing stress and depression related to his job and requested
time off.  His supervisor informed him that he would be fired if he took a leave of absence.
Nevertheless, on December 29, 2005, Chris requested one month of sick leave and Geico's
human resources department granted that leave to begin the following month.  The next day,
December 30, 2005, Chris's boss presented him with a performance improvement plan.  Though
he was on Family and Medical Leave the first week of January, 2006, he nevertheless was
required to come into work to settle some issues.  Geico did not compensate Chris for that time.
Upon information and belief, prior to Chris requesting time off, his annual salary increase had
been approved; while on leave Chris' boss denied him this raise.  On March 20, 2006, Chris
returned to work as his doctor had released him to work part-time.  Despite this restriction, Geico

placed Chris on a full-time schedule, which he worked.  On May 5, 2006, Chris' supervisor complained to him about his performance and informed him that he was on a final warning.  On May 10, 2006, Chris spoke with his boss and requested a personal day to care for his ailing sister.  His supervisor approved the day off.  Later that day Chris's boss and his boss arrived at his home with a police escort and confiscated his work computer, credit cards, cell phone, and car, informing Chris that he was fired.

As a result of all of this, Plaintiff now brings this suit for violations of the Family and Medical Leave Act, the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act.

**ANSWER**:    Paragraph 1 is improperly plead and requires no answer because it does

not conform with FED. R. CIV. P. 8(a)(2), which requires a short and plain statement of the claim,

or with FED. R. CIV. P. 10(b), which requires that each numbered paragraph be limited to a single

set of circumstances.  Notwithstanding the foregoing, GEICO admits that Plaintiff purports to

bring causes of action pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), the

Illinois Minimum Wage Law (820 ILCS 105/1, *et seq.*), and the Illinois Wage Payment and

Collection Act (820 ILCS 820 ILCS 115/1, *et seq.*) but denies that it engaged in any conduct in

violation of the FMLA, the Illinois Minimum Wage Law, the Illinois Wage Payment and

Collection Act, or any other law.  Answering further, pursuant to FED. R. CIV. P. 10(c), GEICO

incorporates by reference its answers to Paragraphs 12, 16, 17, 19, 21, 25-30, 32-34, 37-39, 42-

44, as though fully set forth herein.  Except as specifically admitted, GEICO denies the

allegations of Paragraph 1.

### Parties

2.    Plaintiff Ulysses Gissendanner is a male citizen of the State of Illinois and resides within the territorial limits of the United States District Court for the Northern District of Illinois, Eastern Division.

**ANSWER**:    GEICO admits that Plaintiff is a male and that its employment records

reflect that at the time of his termination Plaintiff was a citizen of the State of Illinois and that he

resided within the territorial limits of the United States District Court for the Northern District of

Illinois. GEICO is without information or knowledge sufficient to form a belief as to the truth of the allegations that Plaintiff currently resides in the State of Illinois and within the territorial limits of the United States District Court for the Northern District of Illinois and therefore denies them.

3.     At all times relevant to this Complaint, Plaintiff was an "eligible employee" as defined by 29 U.S.C. §2611(2).

**ANSWER:**     GEICO admits the allegations of Paragraph 3.

4.     At all times relevant to this Complaint, Plaintiff was an "eligible employee" as defined by 820 ILCS 105/?.

**ANSWER:**     GEICO denies the allegations of Paragraph 4.

5.     At all times relevant to this Complaint, Plaintiff was an "eligible employee" as defined by 820 ILCS 115/1.

**ANSWER:**     GEICO denies the allegations of Paragraph 5.

6.     On information and belief, Defendant, GEICO Insurance Company (hereinafter, "Geico" or "Defendant") exists in and does business within the territorial limits of the United States District Court for the Northern District of Illinois, Eastern Division.

**ANSWER:**     GEICO admits the allegations of Paragraph 6.

7.     On information and belief, at all times relevant to this Complaint, Defendant was an "employer" as defined by 29 U.S.C. § 2611(4).

**ANSWER:**     GEICO admits the allegations of Paragraph 7.

8.     On information and belief, at all times relevant to this Complaint, Defendant was an "employer" as defined by 820 ILCS 105/?.

**ANSWER:**     GEICO denies the allegations of Paragraph 8.

9     On information and belief, at all times relevant to this Complaint, Defendant was an "employer" as defined by 820 ILCS 115/2.

**ANSWER:**     GEICO admits the allegations of Paragraph 9.

## Jurisdiction

10.     This action is brought for violations of 29 U.S.C. §2601 *et seq.* (the Family and Medical Leave Act; "FMLA"), 820 ILCS 105/1 *et seq.* (the Illinois Minimum Wage Law; "IMWL"), and 820 ILCS 115/1 *et seq.* (the Illinois Wage Payment and Collection Act; "IWPCA"). Jurisdiction of this Court is founded upon 28 U.S.C. § 1331.

**ANSWER:**     GEICO admits that Plaintiff alleges violations of the Family and Medical

Leave Act of 1993 ("FMLA"), the Illinois Minimum Wage Law (820 ILCS 105/1, *et seq.*), and

the Illinois Wage Payment and Collection Act (820 ILCS 820 ILCS 115/1, *et seq.*) but denies

that it engaged in any conduct in violation of the FMLA, the Illinois Minimum Wage Law, the

Illinois Wage Payment and Collection Act, or any other law.     GEICO further admits that

jurisdiction in the U.S. District Court is conferred by 28 U.S.C. § 1331 for Plaintiff's FMLA

claims. Except as specifically admitted, GEICO denies the allegations of Paragraph 10.

## Venue

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as, on information and belief, Defendant is located in this District and the facts giving rise to this cause of action occurred in this District.

**ANSWER:**     GEICO admits that venue is proper in this District because the purportedly

unlawful employment practices and the conduct giving rise to Plaintiff's claims allegedly took

place in this District.     Except as specifically admitted, GEICO denies the allegations of

Paragraph 11 and denies further that it engaged in any unlawful conduct whatsoever.

## Events

12.     Gissendanner began working for Defendant on or around September 9, 2003 as a field adjustor.

**ANSWER:**     GEICO admits the allegations of Paragraph 12.

13.     In this capacity, Gissendanner worked primarily from his home and set his own hours.

**ANSWER:**     GEICO denies the allegations of Paragraph 13.

4

14.     His supervisor from his date of hire through in or around May, 2005 was Thomas Stohl [sic].

**ANSWER:**     GEICO admits the allegations of Paragraph 14.

15.     Initially, Defendant paid Gissendanner approximately $42,500 annually.

**ANSWER:**     GEICO admits the allegations of Paragraph 15.

16.     Within his first five months of work, Defendant awarded Plaintiff its Bronze Eagle Award for leading his group in all statistical numbers.

**ANSWER:**     GEICO admits that Plaintiff received the Bronze Eagle Award for the first quarter of 2004.  Except as specifically admitted, GEICO denies the allegations of Paragraph 16.

17.     In or around May, 2004 Defendant promoted Gissendanner to a shop/express adjustor.

**ANSWER:**     GEICO admits that Plaintiff became an Auto Repair Express ("ARX") Adjuster in 2004.  Except as specifically admitted, GEICO denies the allegations of Paragraph 17.

18.     In this capacity, he received claim assignments from the home office and street adjustors, and he also handled the claims for "tow-ins" as well as supplemental orders in the shop.  His duties included setting up customers with rental cars, updating repair statuses, and paying the repair shop, customers, and claimants.  At times appointments were double booked causing him to have to handle multiple customer issues at once.  He worked primarily from a shop office.

**ANSWER:**     GEICO admits the allegations of Paragraph 18.

19.     At the end of 2004, Defendant approved a $2,500 a year merit increase for Plaintiff, as his performance ranked amongst his group's top 10.  He began receiving this raise in or around March 2005.

**ANSWER:**     GEICO admits that Plaintiff received a merit increase for 2004 that he began to receive in or around March 2005.  Except as specifically admitted, GEICO denies the allegations of Paragraph 19.

5

20.    Beginning in or around January, 2005, several quality issues with the repair shop Gissendanner worked from became apparent to Defendant (specifically to Tom Stohl [sic], Frank Cirillo, Paul Gook [sic], and Gary Musolf), including but not limited to estimates and repairs taking too long (at times days), customers complaining of the shop's poor repair work, and shop employee turnover contributing to shop employees becoming increasingly less familiar with Geico claims.

**ANSWER:**    GEICO admits that Stoll, Cirillo, Cook, and Musolf were aware of some problems with the repair shop where Plaintiff worked with respect to estimates, repair time, and customer complaints.    Except as specifically admitted, GEICO denies the allegations of Paragraph 20.

21.    At around this time, Gissendanner notified Geico (Paul Cook, Tom Stohl [sic], and Gary Musolf) of these problems and complained that his workload was becoming too much for just one person. He explained that he had to work 7 days a week, averaging 150-175 claims per month, and that his computer was too slow. He informed Stohl [sic] that he was losing sleep and was depressed because of his job.

**ANSWER:**    GEICO admits that Plaintiff notified Tom Stoll about problems at the shop and complained to Tom Stoll that his workload was heavy.    Except as specifically admitted, GEICO denies the allegations of Paragraph 21.

22.    In or around May, 2005, Frank Cerillo [sic] became Gissendanner's supervisor.

**ANSWER:**    GEICO denies the allegations of Paragraph 22.

23.    In or around August, 2005 the shop at which Gissendanner had been working closed and as such, he filled it [sic] at other shops in the area.

**ANSWER:**    GEICO admits the allegations of Paragraph 23.

24.    At this time, Gissendanner again received a new supervisor, Denis Schafler [sic].

**ANSWER:**    GEICO admits that Plaintiff began reporting to Dennis Schlaffer in September 2005.

25.    Schafler [sic] gave Gissendanner positive reviews on his performance shortly after he began supervising him, and also noted that Gissendanner's company-issued computer

(the most recent at that point of approximately nine computers) was running slow, which deleteriously affected how he could perform his job.

**ANSWER:**    GEICO admits that shortly after Schlaffer began supervising Plaintiff, Schlaffer made some positive comments on Plaintiff's reviews and noted that Plaintiff's computer was running slow. Except as specifically admitted, GEICO denies the allegations of Paragraph 25.

26.    In or around September or October, 2005, Gissendanner informed Schafler [sic] that he intended on joining a class-action overtime case against Defendant.

**ANSWER:**    GEICO denies the allegations of Paragraph 26.

27.    In or around November, 2005, Gissendanner told Schafler [sic] that due to his work he was suffering from stress and depression and that as such he needed to take some sick leave; Schafler [sic] replied "if you take leave, I'll fire you."

**ANSWER:**    GEICO denies the allegations of Paragraph 27.

28.    Notwithstanding that threat, on December 29, 2005 Gissendanner requested one month sick leave, which Human Resources granted to him that day.

**ANSWER:**    GEICO admits that on December 29, 2005, Plaintiff submitted a request to Human Resources for FMLA leave. Except as specifically admitted, GEICO denies the allegations of Paragraph 28.

29.    The following day, on December 30, 2005 Schafler [sic] presented Gissendanner with a performance "write up" and placed him on a performance improvement plan ("PIP").

**ANSWER:**    GEICO admits the allegations of Paragraph 29.

30.    Prior to this, Defendant had never written Plaintiff up or placed him on a PIP, in fact Mr. Gissendanner's previous supervisor, Mr. Cirillo gave him nothing but positive reviews.

**ANSWER:**    GEICO denies the allegations of Paragraph 30.

31.    During this meeting, Schafler [sic] told Gissendanner that if he started his sick leave that day, then he would have to surrender the keys to his company car, as well as surrender his computer, cell phone and credit cards.

**ANSWER:**    GEICO denies the allegations of Paragraph 31.

32.    Gissendanner told his boss that he was taking medical leave beginning January 1, 2006; Schafler told him that nevertheless he expected Gissendanner to come in the first week of January to settle some things.

**ANSWER:**    GEICO denies the allegations of Paragraph 32.

33.    Fearing for his job, Gissendanner in fact came into work that week, however Defendant did not pay him for his work.

**ANSWER:**    GEICO admits that Plaintiff worked during part of the first week in January 2006. Except as specifically admitted, GEICO denies the allegations of Paragraph 33.

34.    At around this same time, the raise Gissendanner had earned and that Defendant had already approved was reversed and consequently Gissendanner did not receive an annual merit increase.

**ANSWER:**    GEICO admits that Plaintiff did not receive a raise for performance year 2005. Except as specifically admitted, GEICO denies the allegations of Paragraph 34.

35.    On or around February 19, 2006 Schafler [sic] ordered Plaintiff to return his company car, which he did and consequently rented a car until his return to work. However, when another employee, Bobby Lewis, took two months of leave, he did not have to return his company car and in fact did not.

**ANSWER:**    GEICO admits that on or around February 19, 2006, Schlaffer instructed Plaintiff to return the company car for the duration of his extended leave pursuant to company policy. Except as specifically admitted, GEICO denies the allegations of Paragraph 35.

36.    Although Geico had temporarily repossessed Plaintiff's car, it nevertheless continued to charge Gissendanner weekly mileage for personal use.

**ANSWER:**    GEICO admits that while Plaintiff was temporarily without access to a company car during part of his FMLA leave, GEICO mistakenly charged Plaintiff weekly mileage for personal use, but ultimately reimbursed him.  Except as specifically admitted, GEICO denies the allegations of Paragraph 36.

37.    On or around March 20, 2006, Gissendanner returned to work on a part-time basis (intermittent leave).

**ANSWER:**    GEICO denies the allegations of Paragraph 37.

38.    Notwithstanding his part-time status Defendant expected him to perform the same amount of work he did as a full-time employee, that is handle six claims a day and catch up on all of the paperwork that had been left untouched during his near-three month absence.

**ANSWER:**    GEICO denies the allegations of Paragraph 38.

39.    On or around May 5, 2006 Schafler [sic] complained to Gissendanner about his work performance – specifically that he was arriving late to work (despite previously informing Plaintiff that he could use his break time to arrive to work after 9:00 in order to accommodate his children's school schedules) and not completing his paperwork on time (despite the fact that Defendant denied him access to a computer for a work week). He concluded the meeting by telling Gissendanner that he was on "final warning."

**ANSWER:**    GEICO admits that on or around May 5, 2006 Schlaffer issued Plaintiff a final warning for his poor work performance, including arriving late to work and not completing his paperwork in a timely manner. Except as specifically admitted, GEICO denies the allegations of Paragraph 39.

40.    Gissendanner had told Schafler [sic] that he could not arrive at work prior to 9 or 9:30 a.m. because he had to ensure that his children were safe and well cared for prior to school.

**ANSWER:**    GEICO admits that at one time, Plaintiff told Schlaffer he preferred a 9:00 or 9:30 start time because of childcare responsibilities. Except as specifically admitted, GEICO denies the allegations of paragraph 40.

41.    On Monday, May 8, 2006 Defendant's Human Resources Department began compiling Gissendanner's termination documents.

**ANSWER:**    GEICO denies the allegations of Paragraph 41.

42.    Gissendanner took a personal day that Wednesday to care for his sick sister (at that point Defendant still had not provided him with a computer to use). He spoke with Schafler [sic] who originally approved his absence.

**ANSWER:**    GEICO denies the allegations of Paragraph 42.

43.    Later that afternoon, Schafler [sic] called Gissendanner and fired him. Plaintiff then called Musolf and told him that he would return Geico's property later that evening; Musolf agreed.

**ANSWER:**   GEICO admits that on May 10, 2006, Schlaffer informed Plaintiff that his employment with GEICO was being terminated. Except as specifically admitted, GEICO denies the allegations of Paragraph 43.

44.   A few hours later, Schafler and is supervisor, Paul Cook arrived at Plaintiff's home and retrieved Gissendanner's company car, computer, and company-issued credit cards. They brought with them a police escort.

**ANSWER:**   GEICO admits that on May 10, 2006, accompanied by a police escort, Schlaffer and his supervisor, Cook, arrived at Plaintiff's home and retrieved his company car, computer, and company-issued credit cards. Except as specifically admitted, GEICO denies the allegations of Paragraph 44.

**Count I**
**Demand for Relief for Violations of**
**The Family and Medical Leave Act Against Defendant Geico Insurance Co.**

45.   Plaintiff restates and realleges paragraphs 1 through 44 as paragraph 45 of this Count I.

**ANSWER:**   GEICO restates and incorporates by reference its answer to Paragraphs 1 through 44 of the Complaint as its answer to Paragraph 45 of Count I as though fully set forth herein.

46.   By virtue of the foregoing, Defendant violated the Family and Medical Leave Act by interfering with his rights under the Act by preventing him from taking leave, by requiring him to perform work while on leave, and by refusing to allow him to work intermittently.

**ANSWER:**   GEICO denies the allegations of Paragraph 46 of Count I.

47.   Plaintiff further violated the FMLA by [sic] as well as [sic] by retaliating against him for taking FMLA leave by firing him shortly after his return to work.

**ANSWER:**   GEICO denies the allegations of Paragraph 47 of Count I.

48.   As a result of these violations, Plaintiff has suffered loss of income, benefits, and other compensation.

**ANSWER:**    GEICO denies the allegations of Paragraph 48 of Count I.

49.    In light of Defendant's knowledge of the statute and willful disregard of its provisions, its conduct warrants the imposition of liquidated damages.

**ANSWER:**    GEICO denies the allegations of Paragraph 49 of Count I.

### Count II
### Demand for Relief for Violations of
### The Illinois Minimum Wage Law Against Defendant Geico Insurance Co.

50.    Plaintiff realleges and restates paragraphs 1 through 44 as paragraph 50 of this Complaint.

**ANSWER:**    GEICO restates and incorporates by reference its answer to Paragraphs 1

through 44 of the Complaint as its answer to Paragraph 50 of Count II as though fully set forth

herein.

51.    By the facts alleged, Defendant violated the Illinois Minimum Wage Law (820 ILCS 105/4a) by refusing to compensate Plaintiff at the rate of one and one-half times his regular hourly rate for hours worked in excess of forty hours per week.

**ANSWER:**    GEICO denies the allegations of Paragraph 51 of Count II.

### Count III
### Demand for Relief for Violations of
### The Illinois Wage Payment and Collections Act Against Defendant Geico Insurance Co.

52.    Plaintiff realleges paragraphs 1 through 44 as paragraph 52 of this Complaint.

**ANSWER:**    GEICO restates and incorporates by reference its answer to Paragraphs 1

through 44 of the Complaint as its answer to Paragraph 52 of Count III as though fully set forth

herein.

53.    Defendant knowingly violated the provisions of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.*) by failure to pay Plaintiff wages, to wit, overtime wages.

**ANSWER:**    GEICO denies the allegations of Paragraph 53 of Count III.

54.    Plaintiff made a demand for amounts due and owing at least three days before this action was brought and is therefore entitled to reasonable attorney's fees under the Illinois Attorney's Fees in Wages Act (705 ILCS paragraphs 225/0.01 *et seq.*).    The demand letter,

previously referenced, is attached to this Complaint as Exhibit 1, the Certificate of Mailing for the demand letter is attached to this Complaint as Exhibit 2, and certified mailing receipt for the demand letter is attached to this Complaint as Exhibit 3.

**ANSWER:**    GEICO neither admits nor denies the allegations contained in Paragraph 54 because the referenced demand letter, certificate of mailing, and certified mailing receipt were not attached to the Complaint.

## AFFIRMATIVE DEFENSES

1.    Plaintiff has failed, in whole or in part, to state a claim upon which relief may be granted.

2.    Plaintiff has failed to mitigate his damages.

3.    GEICO's employment actions against Plaintiff were taken for legitimate, non-discriminatory, non-retaliatory and non-pretextual business reasons.

4.    GEICO has at all times acted in good faith in its dealings with Plaintiff and has not intentionally or willfully discriminated or retaliated against Plaintiff or breached any duty it had towards the Plaintiff in violation of any federal or state statute or common law principle and, therefore, is not liable for injunctive, declaratory, compensatory or punitive damages or prejudgment interest, attorney's fees, expert witness fees, costs or expenses whatsoever.

5.    Punitive damages are not available under the Illinois Minimum Wage Law.

6.    Plaintiff's claims are barred, in part, by the applicable statute of limitations under the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act.

7.    Plaintiff's claims are barred, in part, by the equitable doctrine of laches.

8.    Plaintiff's claims are barred, in part, by collateral estoppel.

9.    Plaintiff's claims are barred, in part, by *res judicata*.

10.    Plaintiff did not use his FMLA leave for its intended purpose.

11.    Plaintiff's claims under the FMLA are barred because Plaintiff did not suffer from a serious health condition entitling him to leave under the FMLA.

12.    Plaintiff's state law claims are barred to the extent they are preempted by federal law.

13.    This Court does not have jurisdiction over Plaintiff's state law claims.

14.    The actions taken by GEICO with respect to Plaintiff were not willful violations.

15.    At all relevant times, Plaintiff was paid amounts that exceed the minimum wage set forth under the Illinois Minimum Wage Law.

16.    In calculating purported damages, Plaintiff fails to account for payments made by GEICO to Plaintiff that were above and beyond those statutorily required and GEICO is entitled to a credit in the form of an offset from such alleged payments.

17.    GEICO reserves the right to assert any additional defenses that may become relevant or apparent through the course of discovery or otherwise during the course of this litigation.

WHEREFORE, GEICO respectfully requests the Court to enter judgment in its favor and against Plaintiff Ulysses Gissendanner. GEICO also asks the Court to award it attorneys' fees and costs incurred in defending this action along with such other and further relief as the Court deems just and proper.

Respectfully submitted,


By:    /s/ Anneliese Wermuth
        One of the Attorneys for Defendant,
        GEICO Insurance Company

Anneliese Wermuth (Ill. Bar No. 6270970)
Kristen A. Weisse (Ill. Bar No. 6278681)
Meckler Bulger & Tilson LLP
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 474-7900
(312) 474-7898 (Fax)

Dated: July 21, 2008

M:\12834\pleading\Geico Answer.doc

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on July 21, 2008, a copy of **Defendant, Gieco Insurance Company's Answer to Plaintiff's Complaint for Damages for Violations of 29 U.S.C. §2601** *et seq.* **(The Family and Medical Leave Act), 820 ILCS 105/1** *et seq.* **(The Illinois Minimum Wage Law), and 820 ILCS 115/1** *et seq.* **(The Illinois Wage Payment and Collection Act)** was filed electronically with the Clerk of the Court using the CM/ECF system. The parties may access this filing through the Court's electronic filing system, and notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.



/s/Anneliese Wermuth
Anneliese Wermuth

N:\shared\wermuthA\cos-ECF.doc